## STATE OF CONNECTICUT *v.* KARRIEM SHAWN HOLNESS
### (SC 17958)

Katz, Palmer, Vertefeuille, Zarella and Sullivan, Js.

Argued May 20—officially released November 18, 2008

*Daniel J. Krisch*, special public defender, with whom were *Michael S. Taylor* and, on the brief, *Philip C. Pires*, legal intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Michael Gailor*, executive assistant state's attorney, and *Kevin M. Shay*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. A jury found the defendant, Karriem Shawn Holness, guilty of two counts of assault in the first degree in violation of General Statutes § 53a-59 (a), and one count of carrying a pistol without a permit in violation of General Statutes § 29-35.[1] The trial court

---

[1] The jury found the defendant not guilty of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-49 (a) (2), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48 (a).

rendered judgment in accordance with the jury verdict,[2] and the defendant appealed.[3] On appeal, the defendant claims that his rights under the confrontation clause of the sixth amendment to the United States constitution,[4] which is made applicable to the states through the due process clause of the fourteenth amendment,[5] were violated when the trial court permitted the state (1) to cross-examine him with certain hearsay statements made by an unavailable declarant, and (2) to introduce into evidence a written statement given to the police by a witness who disavowed knowledge of that statement during his trial testimony. We conclude that the defendant waived his first claim by agreeing to a limiting instruction regarding the hearsay statements at issue. With respect to the defendant's second claim, we conclude that his confrontation rights were not violated because the defense had a full and fair opportunity to cross-examine the witness. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Friday evening, June 27, 2003, the victim, Johnny Figueroa, and two of his friends, Peter Davila and Shavoyteay Sparks, attended a carnival at St. Bridget's Church in the town of Manchester. Sparks had driven the victim to the carnival and had parked his car behind the residence of Davila's grandmother, Marianne Risley. That residence, located at 18 Wood-

[2] The trial court imposed a total effective sentence of twenty-one years imprisonment, execution suspended after fourteen years, and five years probation.

[3] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[5] See *Pointer* v. *Texas*, 300 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

land Street in Manchester, was a short walking distance from the carnival grounds. The victim also had attended the carnival earlier in the week and had overheard a group of men discussing the possibility of robbing him of the jewelry that he had been wearing.

While at the carnival on Friday evening, the victim received a call on his cellular telephone from a friend, Megan Sears, who told him that she was in her car behind Risley's home. Thereafter, the victim, Davila and Sparks left the carnival to meet Sears. Upon leaving, the three men noticed that approximately fifteen to twenty men, including the defendant, were following them.

As the victim, Davila and Sparks approached Risley's residence, Davila separated from the victim and Sparks, apparently to take a shortcut. At about the same time, one of the men in the group that had been following the victim and his two friends called out to the victim. This person, who subsequently was identified as the defendant, stated that he wanted to speak to the victim. The victim ignored the defendant's overture, however, and he and Sparks continued toward the 18 Woodland Street residence. Upon arriving there, the victim and Sparks entered an enclosed porch attached to the residence. The defendant and several other men followed the victim and Sparks there, and demanded the victim's jewelry. At this time, Risley emerged from the house and told the defendant and his companions to leave or she would call the police. The defendant then shot the victim in the chest. The defendant and his companions then fled from the scene.

Thereafter, the defendant was charged with and tried for various offenses stemming from the shooting of the victim. The jury returned a verdict of guilty of two counts of assault in the first degree and one count of carrying a pistol without a permit.

On appeal, the defendant raises two claims under the confrontation clause of the sixth amendment. First, he contends that his confrontation rights were violated when the trial court permitted the state to cross-examine him about certain statements that allegedly had been made to the police by an unavailable declarant, Geraldo Rivera, concerning Rivera's efforts to assist the defendant in disposing of the gun used in the shooting of the victim. The defendant also maintains that his rights under the confrontation clause were violated when the trial court permitted the state to introduce into evidence a prior written statement of an eyewitness, Jerrod Smith, even though, at trial, Smith testified that he had no knowledge of the contents of that statement. We disagree with both of the defendant's claims.

I

The defendant first contends that his sixth amendment rights were violated when the trial court permitted the assistant state's attorney to introduce certain hearsay statements of Rivera during cross-examination of the defendant. In particular, the defendant claims that the challenged portion of his cross-examination violated his rights under *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), pursuant to which the hearsay statements of an unavailable declarant that are testimonial in nature are barred under the confrontation clause of the sixth amendment unless the defendant has had a prior opportunity to cross-examine the declarant. We reject the defendant's claim because it was waived at trial.

The following additional facts and procedural history are necessary for our resolution of this claim. At trial, the defendant testified on direct examination that he had attended the carnival at St. Bridget's Church on June 27, 2003, with two friends, Rivera and Shane Johnson. The defendant also acknowledged that he had fol-

lowed a group of people from the carnival to the residence located at 18 Woodland Street but testified that he had remained on the front lawn of that residence and did not enter the enclosed porch. According to the defendant, he ran from the area after hearing a noise that he presumed was a gunshot. That night, the defendant returned to his home and, thereafter, stayed at his brother's home in Rocky Hill for approximately one week.

On cross-examination, the assistant state's attorney questioned the defendant as to whether it was true that he had gone to Rivera's house on the morning of June 28, 2003, and asked Rivera to drive him to Hartford for the purpose of disposing of the weapon that he had used to shoot the victim. The defendant denied doing so. The assistant state's attorney then asked the defendant whether he knew that Rivera had given a statement to the police explaining that the defendant had arrived at Rivera's home on the morning after the shooting and, at that time, asked Rivera for assistance in disposing of the gun used in the shooting. The defendant admitted that he was aware of Rivera's statement.[6] Defense coun-

---

[6] The assistant state's attorney questioned the defendant as follows:

"Q. Didn't you find out that . . . Rivera ha[d] given a statement to the police about taking you—about you coming over to his house?

"A. Later on.

"Q. That morning of [June 28, 2003]?

"A. When I was—after I was arrested. . . . I didn't learn about that until later on in the case.

"Q. You found out about that after you were arrested, right?

"A. Not right after. I didn't find out until about seven months after I was arrested.

"Q. Okay. And you found out that he had indicated that you had come over and asked for a ride to a location, right?

"A. Yes.

"Q. And you found out that he asked you—that he said that you asked for a ride to North Main and Westland, right?

"A. Yes.

"Q. And you found out that he had said that you told him that you needed to get rid of this, meaning the .25 caliber gun, right?

"A. Yes.

sel did not object to this portion of the cross-examination.

Following a recess, and outside the presence of the jury, defense counsel informed the trial court that he was concerned about the assistant state's attorney's questioning of the defendant regarding Rivera's statements to the police. Defense counsel explained that Rivera was unavailable because, if called on to testify, Rivera intended to invoke his constitutional privilege against self-incrimination in response to any questions. Although defense counsel acknowledged that he had not raised a contemporaneous objection to any of the questions involving Rivera's statements, defense counsel requested that the court take some corrective action, ranging "from a mistrial on one end of the spectrum to some sort of curative instruction [on the other end]." After observing that defense counsel had failed to object when the questions were asked, the court pressed defense counsel to be more specific with respect to his request. Defense counsel responded: "I guess what I would ask for, [at] this point in time, would be possibly some sort of curative instruction . . . [a]bout . . . Rivera not being available as a witness in this trial." Following further discussion between the court and counsel about Rivera's unavailability, the assistant state's attorney stated that he "certainly would not object to an instruction that . . . Rivera's statement[s] [were] not introduced for substantive purposes," and that "probably, the best thing is, as [defense counsel has] requested, [an] instruction that [Rivera is] unavailable." Defense counsel responded by expressing his agreement with such an instruction, adding that it was not necessary for the court to give the instruction until

"Q. And isn't it true that when you found that out, you went to . . . Rivera and said, 'That wasn't right. That was messed up what you did?'

"A. No. I was incarcerated at the time."

the court delivered its final charge to the jury at the conclusion of the trial.

The following day, during a discussion about the charging conference that previously had occurred, the trial court stated: "Okay. [The] [d]efendant's request, it was added to the instruction, something about . . . Rivera not being available to either side. And I believe both sides agreed on the language. Is that right?" Both the assistant state's attorney and defense counsel responded in the affirmative.

In its final instructions to the jury following the closing arguments of counsel, the trial court instructed the jury in relevant part: "During the evidentiary portion of this case, you heard about statements attributed to . . . Rivera. This court has determined that . . . Rivera was unavailable as a witness in [this] case through no fault of either party, the state or the defendant. . . . Rivera was not available for either direct or cross-examination as a witness, and, therefore, the statements attributed to . . . Rivera are not to be used as substantive evidence." Defense counsel took no exception to this portion of the jury charge.

The defendant cannot prevail on his unpreserved constitutional claim because it falls squarely within the waiver doctrine that this court adopted in *State* v. *Fabricatore*, 281 Conn. 469, 481–82, 915 A.2d 872 (2007). Under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harm-

lessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable . . . and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Fabricatore*, supra, 476–77. As we explained in *Fabricatore*, "[i]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial." (Internal quotation marks omitted.) Id., 478. As we also explained in *Fabricatore*, a constitutional claim that *has* been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, "we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." (Citation omitted; internal quotation marks omitted.) Id., 482; accord *State* v. *Brewer*, 283 Conn. 352, 361, 927 A.2d 825 (2007). To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court. See, e.g., *State* v. *Fabricatore*, supra, 482–83.

In the present case, defense counsel clearly and unequivocally agreed to the limiting instruction that the trial court gave to the jury concerning the statements that the assistant state's attorney had attributed to Rivera during cross-examination of the defendant. Although defense counsel suggested that he might seek a mistrial, he elected not to do so, instead expressing his satisfaction with the trial court's limiting instruction. Thus, the defendant's claim fails under the third prong of *Golding*.

The defendant contends that he is not barred from challenging the propriety of the limiting instruction because the state has not demonstrated that waiver of

any claim under *Crawford* v. *Washington*, supra, 541 U.S. 36, was knowing and intelligent. Although a defendant will not be deemed to have waived certain constitutional rights unless the state can demonstrate that the defendant's waiver was knowing and intelligent; see, e.g., *State* v. *T.R.D.*, 286 Conn. 191, 202–203, 942 A.2d 1000 (2008) (defendant's waiver of counsel must be knowing and intelligent); *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006) (defendant's guilty plea must be knowing and voluntary); that requirement is inapplicable when, as in the present case, counsel has waived a potential constitutional claim in the exercise of his or her professional judgment. Thus, for purposes of this appeal, the state need not establish that defense counsel was aware of the applicability of *Crawford* to the factual scenario presented. In our adversary system, the trial court was entitled to presume that defense counsel was familiar with *Crawford* and had acted competently in determining that the limiting instruction was adequate to safeguard the defendant's sixth amendment rights.[7] To conclude otherwise would require the trial court to canvass defense counsel with respect to counsel's understanding of the relevant constitutional principles before accepting counsel's agreement on how to proceed. For good reason, there is nothing in our criminal law that supports such a requirement.[8] Accordingly, the defendant cannot prevail on his claim under *Crawford* because that claim has been waived as a result of

---

[7] In fact, defense counsel *was* aware of *Crawford* because he previously had invoked that case in connection with his objection to the assistant state's attorney's use of Smith's prior written statement. See footnote 10 of this opinion and accompanying text.

[8] Of course, in circumstances in which defense counsel's waiver of a constitutional claim cannot be justified, that is, when the waiver constitutes a violation of the defendant's right to the effective assistance of counsel, the defendant may seek recourse through habeas corpus proceedings. Such proceedings are available to safeguard the constitutional rights of any defendant who has been prejudiced by the ineffective assistance of his or her attorney.

defense counsel's agreement with the trial court's limiting instruction.[9]

## II

The defendant next contends that his confrontation rights were violated when the trial court permitted the state to introduce into evidence Smith's prior inconsistent statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). We disagree.

The following additional facts and procedural history are pertinent to our resolution of this claim. Smith, who had been present both at the carnival and at the 18 Woodland Street residence on the night of the incident, was called by the state as a witness. On direct examination, the assistant state's attorney attempted to refresh Smith's recollection of the events surrounding the June 27, 2003 shooting by showing Smith a written statement that, according to the state, Smith had provided to the

---

[9] The defendant relies on *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 392 A.2d 966 (1978), to support his contention that defense counsel's agreement to the limiting instruction does not foreclose his claim on appeal because the record does not reflect that counsel's waiver was knowing and intelligent. In *Reinke,* an arbitration case, counsel for the plaintiff and counsel for the defendants agreed that they had confidence in the arbitrator and that he did not need to be sworn as required by statute. Id., 25. Although the governing statute expressly required a *written* waiver of the arbitrator's oath, no such written waiver was executed. Id., 26. After the arbitrator had rendered a decision for the defendants, the plaintiff filed an application to vacate the award, claiming that the arbitrator had not been sworn and that there was no written waiver of the oath. Id. The trial court rendered judgment granting the plaintiff's application to vacate; id.; and this court affirmed the trial court's judgment. See id., 30. In affirming the trial court's judgment, we stated, without elaboration, that "[n]either the fact that the plaintiff raised the question of the oath, nor the fact that he agreed that no oath need be administered, indicates actual knowledge of a right which was intentionally relinquished." Id., 27–28. *Reinke* does not control our resolution of the present case because our decision in *Reinke* was governed by an express statutory waiver requirement. To the extent that *Reinke* remains good law, we see no reason to extend its limited holding to the factual scenario presented by this criminal case.

Manchester police in the early morning hours of June 28, 2003. Although Smith acknowledged that he had given an oral statement to the police at that time and that the written statement bore his signature and initials, Smith further testified that the police never had reduced his oral statement to writing. Smith also stated that he did not recognize the written statement and that he did not recall telling the police most of what appeared in the statement.

The assistant state's attorney then was granted permission by the court to suspend his direct examination of Smith and to call Detective James Graham of the Manchester police department. Graham testified that he had interviewed Smith at the Manchester police headquarters on June 28, 2003. Over defense counsel's objection, Graham explained that Smith had told him that, prior to the incident in which the victim was shot, he had overheard the defendant tell someone that he was "going to get . . . somebody . . . at this carnival in Manchester . . . ."[10] Graham testified that Smith also had told him that, later, at the carnival, Smith saw the defendant, who told Smith that he had found the person whom he was looking for. Smith told Graham that the defendant, Smith and approximately twenty other people thereafter followed that person, who subsequently was identified as the victim, to the 18 Woodland Street address. Smith testified that he did not enter the 18 Woodland Street residence, and, when he heard the gunshot, he and the others fled.

Graham also testified that, after obtaining Smith's oral statement, he reduced that statement to a typewritten version on a desktop computer at police headquarters, verifying each piece of information with Smith,

---

[10] Defense counsel relied on *Crawford* v. *Washington*, supra, 541 U.S. 36, as one of the bases for his objection to Graham's testimony regarding the contents of Smith's statement.

who sat next to Graham as he typed. When the statement was completed, Smith reviewed it for any inaccuracies. Smith then acknowledged the accuracy of the typewritten statement[11] and signed and initialed it. At the conclusion of the state's direct examination of Graham, the trial court permitted the state to introduce Smith's written statement as substantive evidence in accordance with *State* v. *Whelan*, supra, 200 Conn. 753.

After defense counsel had completed his cross-examination of Graham, Smith returned to the witness stand and was questioned briefly by the state. On cross-examination by defense counsel, Smith testified at length about his knowledge of the incident, his version of the police interview, and the discrepancies between his trial testimony and the written statement. In particular, Smith denied that the defendant ever had told him that he was going to "get" or harm anyone.

On appeal, the defendant claims that the admission of Smith's written statement violated the defendant's rights under the confrontation clause of the sixth amendment. Specifically, the defendant contends that, because Smith testified that the police never had obtained a written statement from him, Smith was functionally unavailable for cross-examination, and, therefore, the state was barred, under *Crawford* v. *Washington*, supra, 541 U.S. 68, from introducing the statement into evidence.

We commence our review of the defendant's claim with certain applicable principles of law. In *State* v. *Whelan*, supra, 200 Conn. 743, this court determined that an out-of-court statement is admissible as substantive evidence if (1) the statement is a prior inconsistent statement, (2) it is signed by the declarant, (3) the declarant has personal knowledge of the facts stated

[11] Graham testified that he had Smith raise his right hand and swear to the truthfulness of the typewritten statement, which Smith did.

therein, and (4) the declarant testifies at trial and is subject to cross-examination. Id., 753; see also Conn. Code Evid. § 8-5 (1). The defendant's claim on appeal pertains only to the fourth prong of the *Whelan* test.

"Under *Crawford* v. *Washington,* supra, 541 U.S. 68, the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant."[12] (Internal quotation marks omitted.) *State* v. *Simpson,* 286 Conn. 634, 651–52, 945 A.2d 449 (2008). If, however, the declarant "is deemed to have been available for cross-examination at trial, his statement does not implicate the defendant's rights under the confrontation clause." *State* v. *Pierre,* 277 Conn. 42, 78, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006).

The defendant's claim is foreclosed by *Pierre,* in which we rejected the contention of the defendant, Gregory Pierre, that, even though "[the witness] took the stand and answered questions, he was 'functionally unavailable' for cross-examination as to the contents of his [prior written] statement [to the police]"; id., 79; because of his claimed memory loss at trial and his testimony that he had signed the statement only to keep the police from harassing him. Id. We noted that Pierre's "argument equate[d] a declarant's inability or unwillingness to remember prior statements made to the police with a general unavailability from cross-examination in its entirety." Id. In *Pierre,* "[w]e relied on our previous *Whelan* jurisprudence, and sister state decisions that had interpreted *Crawford*'s availability element; see id., 81–84; and concluded that 'a witness' claimed inability to remember earlier statements or the events sur-

---

[12] The state does not claim on appeal that Smith's statements were not testimonial in nature within the meaning of *Crawford.*

rounding those statements does not implicate the requirements of the confrontation clause under *Crawford*, [as] long as the witness appears at trial, takes an oath to testify truthfully, and answers the questions put to him or her during cross-examination.' " *State* v. *Simpson*, supra, 286 Conn. 653, quoting *State* v. *Pierre*, supra, 277 Conn. 86.

Although Smith testified that he had never provided the police with a written statement, he took the stand, swore to testify truthfully, was subject to extensive cross-examination by defense counsel and answered all questions posed to him. During his testimony, Smith acknowledged that he had given an oral statement to the police and that his signature and initials appeared on the written statement. Smith was questioned about his recollection of the events relating to the shooting of the victim, his relationship with other persons involved in the incident, including the defendant, the statements that he had given to the police, and his contention that the police had threatened to arrest him if he refused to speak to them about the shooting incident. Consequently, there is no reason to conclude that Smith was functionally unavailable for cross-examination merely because he claimed that he had not given the police a written statement.

We reject the defendant's contention that this case is distinguishable from *Pierre* by virtue of the fact that Smith denied having provided a written statement to the police when the witness in *Pierre* did not. See *State* v. *Pierre*, supra, 277 Conn. 56. We see no material difference between *Pierre* and the present case. In each case, the witness disavowed the contents of his prior written statement. Moreover, although Smith claimed that he had not given the police a written statement—despite his concession that the written statement attributed to him by the state contained his signature and initials—Smith did acknowledge giving the police an oral state-

ment. The defense, therefore, had a full and fair opportunity to examine Smith about his version of the events surrounding his questioning by the police. The sixth amendment requires no more.

The judgment is affirmed.

In this opinion the other justices concurred.