STATE OF CONNECTICUT *v.* BRIAN DAWSON
(AC 29481)

Bishop, Harper and Foti, Js.

Argued September 2—officially released November 10, 2009

*Carlos E. Candal*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Seth R. Garbarsky*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Brian Dawson, appeals from the judgment of conviction, following a jury trial, of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[1] The defendant claims that the trial court improperly instructed the jury regarding the issue of self-defense, thereby depriving him of his right to present a defense, his right to due process and his right to a fair trial in violation of the sixth and fourteenth amendments to the United States constitution. Because we conclude that the defendant waived his right to challenge the court's self-defense instruction, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On September 7, 2005, the defendant and the victim, Miguel Rodriguez, were inmates at the Cheshire

---

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

Correctional Institution and were both housed in an area known as north block one. At approximately 11:37 a.m., the inmates from north block one were in the process of returning from the dining hall, and many of the inmates were still moving around the cell block. A surveillance camera recording showed Rodriguez waiting for the defendant and then walking up to the defendant outside of the defendant's cell. The two men were seen speaking and gesturing to each other. The defendant then walked away in the direction of his cell. Moments later, the inmates again were seen speaking to each other, and the defendant raised his hands and gestured at Rodriguez. The defendant appeared to walk away again, and then there was "some movement" and Rodriguez backed up and put his arms up.[2] The two men then began fighting. The video did not show who threw the first punch, and the two men each claimed at trial that it was the other.

Correction officer Richard DeMorro testified that he saw in his peripheral vision that the defendant and Rodriguez were "tossing around on the chairs" in a physical altercation. On seeing the two inmates fighting, DeMorro issued a "code blue," which alerted the other staff that there was a fight taking place between inmates. The video recording showed that the defendant began choking Rodriguez and then "slammed" him to the floor. At that point, Rodriguez was on the ground and did not continue to fight. Once Rodriguez was on the floor, the defendant twice "stomped" on Rodriguez' head with his sneaker. DeMorro testified that when a fight is taking place, it is standard procedure to remain at the guard desk and await the arrival of additional officers to help secure the area. DeMorro admitted,

---

[2] The defendant testified that the "movement" seen on the video recording was Rodriguez throwing the first punch. The state maintained, however, that it was the defendant who threw the first punch, and it appears from the record that the video recording was inconclusive as to this point.

however, that he broke protocol and left the desk because "[t]he injuries put upon . . . Rodriguez were starting to get severe."

Ricardo Ruiz, a physician working in the medical department of the Cheshire Correctional Institution, testified that when he responded to the scene in north block one, Rodriguez was unconscious. Ruiz observed a red shoeprint across the right side of Rodriguez' face and blood coming from the back, right portion of his head. Ruiz diagnosed Rodriguez as having suffered internal injury to his brain, as evidenced by hemorrhaging, as well as contusions and hematomas in the front, side and back of his head. Ruiz noted that Rodriguez' subarachnoid hemorrhaging risked causing a host of serious medical conditions and created a substantial risk of death.

Throughout the course of the trial and during summations, the defendant maintained that he acted in self-defense. He argued that he was merely defending himself against Rodriguez, who was waiting for him at his cell, had threatened him and had punched him in the head. The defendant stated that after he was hit, he believed that he was under attack and that it was "him or me." He admitted to engaging in a "mutual fight" with Rodriguez. The defendant claimed that when he and Rodriguez went to the ground, he fell on top of Rodriguez but could not have slammed him down because he was weak from being hit by Rodriguez. He also claimed that once he had Rodriguez on the ground and was on top of Rodriguez, Rodriguez remained a threat to him because he himself had been injured. The defendant stated that he next got up and "stomp[ed] him." Specifically, the defendant described how twice he jumped in the air and came down on Rodriguez' face with his sneakered foot. The defendant testified that he did not know what Rodriguez' physical condition was at that point in the altercation and that his intention

was only to stop Rodriguez from harming him and to keep Rodriguez down because he still feared for his safety. The defendant maintained that he had acted in self-defense during the entire physical altercation.

The jury found the defendant not guilty of the charge of assault in the first degree with a dangerous instrument.[3] On the lesser included offenses, the jury found the defendant not guilty of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (1) and 53a-59 (a) (1), and assault in the second degree in violation of General Statutes § 53a-60 (a) (1), but found him guilty of assault in the third degree in violation of § 53a-61 (a) (1). The court rendered judgment of conviction in accordance with the jury's verdict and sentenced the defendant to one year imprisonment to be served consecutively to the sentence that he was then serving. This appeal followed.

The defendant claims that the court improperly instructed the jury on self-defense and, thus, deprived him of his constitutional rights to present a defense, to due process and to a fair trial. The defendant argues that the court incorrectly substituted an objective standard for the subjective-objective standard, which is contemplated by the self-defense statute, thereby confusing and misleading the jury.[4] Additionally, the defendant

---

[3] The day after the incident, the state charged the defendant with assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On September 21, 2007, the state filed an amended information charging the defendant with assault in the first degree with intent to cause serious physical injury in violation of § 53a-59 (a) (1) and assault in the first degree with extreme indifference to human life in violation of § 53a-59 (a) (3). On September 26, 2007, the state filed an amended information charging the defendant with assault in the first degree with a dangerous instrument in violation of § 53a-59 (a) (1).

[4] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes

argues that it was error to include an instruction regarding the duty to retreat because such an instruction is appropriate only when deadly force is alleged, and it was not alleged in this case.

Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. . . ." Indeed, it is well settled that absent exceptional circumstances, it is unfair to the trial court, as well as the state, to allow a defendant to pursue a claim of error on appeal that was not raised before the trial court or that conflicts with the theory of defense or defense strategy pursued at trial. See *State* v. *Johnson*, 289 Conn. 437, 461, 958 A.2d 713 (2008); see also *Henderson* v. *Kibbe*, 431 U.S. 145, 154, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977) ("[o]rderly procedure requires that the respective adversaries' views as to how the jury should be instructed be presented to the trial judge in time to enable him to deliver an accurate charge and to minimize the risk of committing reversible error"). The defendant acknowledges that he failed to preserve his claim by taking exception to the charge as given. As a result, he now requests review under the doctrine set forth in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or in the alternative, under the plain error doctrine. See Practice Book § 60-5.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is

that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable . . . and the second two involve whether there was constitutional error requiring a new trial. . . . [I]n the usual *Golding* situation, the defendant raises a claim on appeal [that], while not preserved at trial, at least was not waived at trial. . . . [A] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . . To reach a contrary conclusion would result in an ambush of the trial court by permitting the defendant to raise a claim on appeal that his or her counsel expressly had abandoned in the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Holness*, 289 Conn. 535, 542–43, 958 A.2d 754 (2008).

Preliminarily, the state maintains that the defendant cannot prevail under *Golding* because he waived any objection to the propriety of the instruction challenged in his appeal.[5] As noted previously, when a defendant has waived the constitutional claim being raised on

---

[5] The state does not assert that the claim fails to meet either of the first two prongs of *Golding*. We agree that the record is adequate for review and that the claim is of constitutional magnitude. See *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995) ("[a]n improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension" [internal quotation marks omitted]). Thus, we do not address these prongs in any greater detail.

appeal, the third prong of the *Golding* test is not satisfied and the unpreserved claim will not be reviewed. In this instance, because we find that the defendant waived any claim of error regarding the court's self-defense instruction, his claim fails to meet the third prong of the *Golding* test. Thus, we decline to review the defendant's claim on its merits because the defendant, at trial, waived the claim he now asserts.[6]

The following additional facts are relevant to the state's claim of waiver. On September 21, 2007, following the close of the state's case, there was a discussion outside the presence of the jury during which the court asked both counsel how far along they were with their preparation for proposed jury instructions. Counsel for the defendant responded, stating that "[m]y main focus has been [that] we will be asking for a self-defense charge, and I don't think anything, I don't at this point intend to ask for charges on any lesser included offenses." On September 25, 2007, the next day the court was in session, counsel for the defendant stated on the record, "I will say that I handed the prosecutor our request for jury instructions. And my reference is to the evidence, to some degree I anticipate [the defendant's] evidence today, but it's just in regard to the self-defense request to charge." Prior to the start of the afternoon court session on the same day, the prosecutor handed to the court the state's preliminary request to

---

[6] We also decline to grant review under the plain error doctrine. "[The] [p]lain [e]rror [r]ule may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . The distinction between a forfeiture of a right (to which the [p]lain [e]rror [r]ule may be applied) and a waiver of that right (to which the [p]lain [e]rror [r]ule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70–71, 967 A.2d 41 (2009).

charge. Outside the presence of the jury, the court told the prosecutor that "[y]our self-defense request is this; it looks as though it's the same as [defense counsel's]." The prosecutor responded by saying, "I'm sure it is, it was taken right from the judicial page;[7] I did not read [defense counsel's preliminary request to charge]." Defense counsel did not make any comment during this discussion with the court.

Later that same afternoon, after the defense had rested, the court conducted a charge conference off the record in chambers. Subsequently, the court discussed the charge with counsel on the record. At the start of the discussion on the record, the court indicated that it had given the parties a document that was a preview of its intended jury instruction and wanted to go through it with counsel on the record. The court proceeded to review its written proposed changes in significant detail. When the parties reached the issue of self-defense, the court stated: "Then, with respect to self-defense, I think both parties have generally included the same language. It's the sample 2.39 from the instructions online, which is the general instruction of self-defense. So, I'll include that." Defense counsel responded: "It's pretty much what I gave you." The court then continued on with other unrelated issues.

A short time later, defense counsel again addressed the self-defense instruction by interjecting, "[a]nd the only other issue, I think, in my request on self-defense, I ask for some sort of language indicating that self-defense is a complete defense with regard to all of the charges . . . ." In response, the state noted that the judicial sample instruction contained the phrase, "if you find there is self-defense, you must acquit." There was no further discussion regarding that specific issue, but

---

[7] The Connecticut criminal jury instructions are available on the Connecticut judicial branch website. See http://jud.ct.gov/ji/criminal.

the state did raise an objection regarding a phrase included in the defendant's proposed instruction. The state wanted to replace the phrase, "one of those is the physical force or the product of illegal combat," with the phrase, "mutual combat," as it was the language used in a more recent update of the judicial sample charge. Defense counsel did not object but only noted: "I may have been using an older version." Finally, the court asked the parties if there were any other issues that needed to be included. Defense counsel responded: "No, [Your Honor]."

The following day, September 26, 2007, prior to the start of closing arguments, the court informed the parties of changes that were reflected in the court's second draft of its jury charge. The court went through each of those changes on the record, none of which pertained to the self-defense charge. When the court had finished, it asked the parties if there were "any other changes that [they] would seek." Defense counsel responded: "No, [Your Honor]."

The defendant's claim of self-defense featured prominently in both parties' closing arguments. The prosecutor argued that it was not a case of self-defense. He also told the jury that it would be given an instruction regarding self-defense and referred specifically to the factors listed in the instruction. On this basis, the state argued that the defendant should not prevail in his claim of self-defense. The prosecutor then argued that because the defendant was engaged in "mutual combat" and used "unreasonable" force, the self-defense claim should fail. Conversely, the defense attorney crafted his entire closing argument around the theory that the defendant was acting in self-defense, that he was in danger and that he had to keep fighting until the threat was over.

When the arguments were finished, the court instructed the jury. In the challenged portion of the

self-defense charge, the court stated: "Similarly, you must determine whether the degree of force used was reasonable. The test for the degree of force in self-defense is a subjective-objective test, meaning that it has some subjective aspects and some objective aspects. Self-defense, thus, requires the jury to measure the justifiability of the defendant's actions from a subjective perspective, that is, what the defendant reasonably believed under the circumstances presented in this case and on the basis of what the defendant perceived them to be. [General Statutes §] 53a-19 (a) requires, however, that the defendant's belief must have been reasonable and not irrational or unreasonable under the circumstances; that is, would a reasonable person in the defendant's circumstances have reached that belief? That is the objective aspect of the test. It is both a question of what his belief was and whether it was reasonable."

Additionally, the defendant challenges the following portion of the jury charge: "However, you must find that the use of physical force was not justified if the state proves beyond a reasonable doubt that, one, the defendant provoked the use of physical force by the other person. In order to provoke the use of physical force by another, it is not enough that the defendant by his conduct elicited the use of physical force by another; rather, the defendant must have embarked upon such conduct with the specific intent to provoke the other into using physical force and intending to cause the other physical injury or death. Two, the physical force was the product of mutual combat that [was] not authorized by law, or, three, the defendant was the initial aggressor and did not adequately retreat. If you find that the defendant was the initial aggressor, the defendant's use of force may still be justified if he withdrew from the encounter and made it clear to the other person that he was retreating from the use of force."

After the charge, outside the presence of the jury, the state noted that it had "one minor exception" regarding the self-defense instruction. The state argued that in the section that listed the three exceptions for which the defendant was not entitled to a defense of self-defense, the word "or" was used between the second and third exceptions, but not between the first and second exceptions. The prosecutor requested the addition of the word "or" to the printed copy of the instruction that would be provided to the jury. When asked for comment, the defense attorney replied that the correction was "so slight as hardly to be needed," but he did not object. Defense counsel asked if the court was going to instruct the jury on the use of the video recording, but on being informed that the court already did so, he did not take exception to any part of the jury charge.

With these procedural facts at hand, we now turn to the applicable law. "Waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . It involves the idea of assent, and assent is an act of understanding. . . . The rule is applicable that no one shall be permitted to deny that he intended the natural consequences of his acts and conduct. . . . Connecticut courts have consistently held that when a party fails to raise in the trial court the constitutional claim presented on appeal and affirmatively acquiesces to the trial court's order, that party waives any such claim." (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 448–49, 978 A.2d 1089 (2009). "[T]he reason that the objection must be raised at trial is to afford the court an opportunity to correct an allegedly improper instruction. . . . When we speak of correcting the claimed error, we mean when it is possible during that trial, not by ordering a new trial. We do not look with favor on parties requesting . . . an instruction or a procedure to be followed, and later claiming

that that act was improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Velez*, 113 Conn. App. 347, 358, 966 A.2d 743, cert. denied, 291 Conn. 917, 970 A.2d 729 (2009).

Our Supreme Court recently has held that a party will not be found to have waived a claim of instructional error unless it is shown that he "actively induced" the trial court to give the instruction that he challenges on appeal. *State* v. *Ebron*, 292 Conn. 656, 682, 975 A.2d 17 (2009); see also *State* v. *Madigosky*, 291 Conn. 28, 35 n.7, 966 A.2d 730 (2009) (acquiescence at trial to jury instruction challenged on appeal, without more, does not constitute induced error that would preclude review under *Golding*). Conversely, when there is an indication that the defendant actively induced the trial court to give the instruction that he now challenges on appeal, the defendant's claim is waived and is thus not reviewable under *Golding*. *State* v. *Madigosky*, supra, 35 n.7.

We conclude, consistent with the court's reasoning in *Ebron*, that the defendant actively induced the court to give the instruction that he now challenges on appeal. It is asserted in the defendant's brief that the defendant did not file a request to charge. The defendant literally may be correct that he did not "file" a request to charge, in that the trial record does not include a copy of the defendant's request to charge, but the record makes it abundantly clear that he did submit one to the court. The record is replete with references to the defendant's request to charge. Defense counsel stated on the record that he gave the prosecutor a copy of "our request for jury instructions," and he noted that the defendant's request to charge on self-defense was based in part on anticipated testimony from the defendant. Upon receiving a copy of the state's request to charge, the court commented that the state's requested self-defense charge appeared to be the same as that requested by the defendant.

Although the record does not contain a copy of the defendant's request to charge regarding self-defense from which to compare the charge that was given, the record is sufficient to indicate that the charge was consistent with the defendant's request. The court, the prosecutor and defense counsel all mentioned at some point in the record that they had used the sample instruction for self-defense, taken from the judicial branch Internet site, when drafting their proposed or requested jury instructions. After the court's comment to the prosecutor that his request to charge looked as though it was the same as defense counsel's, the prosecutor responded by saying, "I'm sure it is, it was taken right from the judicial page." See footnote 7 of this opinion. Significantly, following the charge conference that was held in chambers, the court went through its proposed jury instruction on the record. When the parties reached the issue of self-defense, the court stated: "Then, with respect to self-defense, I think both parties have generally included the same language. It's the sample 2.39 from the instructions online, which is the general instruction of self-defense. So, I'll include that." Defense counsel responded: "It's pretty much what I gave you." This section of the trial transcript clearly shows that the court's proposed instruction for self-defense largely mirrored that which was requested by the defendant. This colloquy also reveals that the defendant actively induced the court to use the language that was being proposed by the court. The defendant's remark, "[i]t's pretty much what I gave you," indicates the defendant's acknowledgment that his request was being followed by the court and that he did not merely acquiesce to the court's instruction.

Further, a careful review of the record presents the strong inference that the specific language being challenged in the court's self-defense instruction is identical to the language used in the state's and the defendant's

requests to charge. We know from the record that the state took the language in its request to charge directly from the judicial sample instruction, and because we know that the court's self-defense charge was exactly the same as the state's request to charge, we also know that the charge as given was the same as the judicial sample instruction. Because a fair review of the record demonstrates that the defendant also used the judicial sample instruction for his request to charge, we can infer that the charge given by the court was very similar, if not identical, to that requested by the defendant.

In sum, unlike *Ebron*, the defendant here did not merely acquiesce to the court's jury instructions. To the contrary, he played an active role in crafting the charge given by the court. Both the state and the defendant spent considerable time during closing arguments addressing the issue of self-defense. The record shows that defense counsel was concerned with the self-defense instruction above all others, as is evident from his statement that "my main focus has been [that] we will be asking for a self-defense charge." Multiple times during the trial, the parties' attention was directed to the self-defense charge, and in none of those discussions did the defendant raise any question as to the propriety of the proposed self-defense charge. When asked if there were any other issues, the defendant said on multiple occasions: "No, [Your Honor]." On the basis of the entire record, we find that the defendant played an active role in advocating for the specific instruction that he now challenges. Accordingly, he waived his right to challenge that instruction on appeal. Having waived his right to challenge the propriety of the court's instruction, the defendant's claim fails to satisfy the third prong under the *Golding* test for unpreserved constitutional claims, and, thus, we do not review the claim on its merits.

The judgment is affirmed.

In this opinion the other judges concurred.