## STATE OF CONNECTICUT *v.* NAZRA MUNGROO
## (SC 18336)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 28, 2010—officially released January 5, 2011**

*James B. Streeto*, assistant public defender, with whom was *Shivani J. Desai*, law student intern, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Harry Weller*, senior assistant state's attorney,

** January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Melissa L. Streeto*, assistant state's attorney, and *Michael Sullivan*, former supervisory assistant state's attorney, for the appellee (state).

*Lisa J. Steele* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

ZARELLA, J. The defendant, Nazra Mungroo, appeals, following our granting of certification,[1] from the judgment of the Appellate Court, which affirmed the trial court's judgment of conviction, rendered after a jury trial, of fraudulent receipt of workers' compensation benefits in violation of General Statutes § 31-290c (a) (2).[2] *State* v. *Mungroo*, 111 Conn. App. 676, 699, 962 A.2d 797 (2008). On appeal, the defendant contends that the Appellate Court improperly determined that she had waived her claim of error regarding a jury instruction. We affirm the judgment of the Appellate Court.

The record and the Appellate Court's opinion reveal the following relevant facts and procedural history. "In March, 2002, the defendant was employed as the general cashier and income auditor for the Hilton Hotel in [the city of] Hartford (hotel). In the early morning hours of

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly determine that the defendant had waived her claim of error regarding a jury instruction?" *State* v. *Mungroo*, 291 Conn. 907, 969 A.2d 172 (2009).

[2] General Statutes § 31-290c provides in relevant part: "(a) Any person or his representative who makes or attempts to make any claim for benefits, receives or attempts to receive benefits, prevents or attempts to prevent the receipt of benefits or reduces or attempts to reduce the amount of benefits under this chapter based in whole or in part upon . . . (2) the intentional nondisclosure of any material fact affecting such claim or the collection of such benefits, shall be guilty of a class C felony if the amount of benefits claimed or received, including but not limited to, the value of medical services, is less than two thousand dollars, or shall be guilty of a class B felony if the amount of such benefits exceeds two thousand dollars. Such person shall also be liable for treble damages in a civil proceeding under section 52-564."

March 4, 2002, the hotel was robbed of [more than $100,000] in cash and checks stored in the hotel's main safe. The defendant reported the robbery and was taken to Hartford Hospital, complaining of [diabetic] related symptoms. The defendant was absent from her employment for a [few] days but carried out her responsibilities on March 7 and 8, 2002. She then took sick leave until May 20, 2002. She received workers' compensation benefits in excess of $5000 [for her claims arising from the robbery]." Id., 678–79.

After an investigation, it was discovered that the defendant had participated in the staging of the hotel robbery.[3] For her role in the robbery, the defendant was convicted of larceny in the first degree in violation of General Statutes § 53a-122 (a) (2) and falsely reporting an incident in the second degree in violation of General Statutes § 53a-180c (a) (3). See *State* v. *Mungroo*, 104 Conn. App. 668, 669, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008). The defendant subsequently was charged with fraudulent receipt of workers' compensation benefits in violation of § 31-290c (a) (2) for failing to disclose material facts regarding the true circumstances existing at the time and place of her alleged injury, that is, that her alleged injury arose out of her participation in the staged robbery of the hotel. A jury found the defendant guilty, and the trial court sentenced her to one year imprisonment, to be served consecutively to the sentence that the defendant received for her conviction of first degree larceny and falsely reporting an incident in the second degree. See *State* v. *Mungroo*, supra, 111 Conn. App. 679.

---

[3] The staging of the robbery was apparently so inept that the trial court commented that it "looks like the robbery was staged by the Monty Python people." For a more complete recitation of the facts concerning the defendant's participation in the robbery, see *State* v. *Mungroo*, supra, 111 Conn. App. 679–86.

Thereafter, the defendant appealed to the Appellate Court from the judgment of conviction. Id., 678. In her appeal to the Appellate Court, the defendant claimed, inter alia, that the trial court improperly had instructed the jury on the element of "material fact" contained in § 31-290c (a) (2). Id., 698. The defendant specifically claimed that the trial court improperly had defined "material fact" as " 'merely important,' " rather than as a fact that "mak[es] a difference in the outcome of the case." Id., 698–99. The defendant acknowledged that her claim was not preserved at trial but requested appellate review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] *State* v. *Mungroo*, supra, 111 Conn. App. 698. The Appellate Court concluded, however, on the basis of its review of the briefs and the record, that the defendant had waived her claim and, therefore, that it was not reviewable under *Golding*. Id., 698, 699. The Appellate Court noted that, "[i]n preparing its charge to the jury, the [trial] court [had] presented counsel with three drafts of [the charge] for comment and objection. The [defense had withdrawn its] request to charge and [had] agreed to the charge that the court intended to give." Id., 699. Accordingly, the Appellate Court concluded that the defendant had waived any challenge to the trial court's charge. Id. This certified appeal followed.

The defendant claims that the Appellate Court applied the wrong legal standard when it determined that she had waived her claim of instructional error. She claims that, although the defense acquiesced in the

---

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

charge that the trial court had given to the jury, the defense did not induce the trial court to give the challenged instruction, and, therefore, her claim is reviewable in accordance with *State* v. *Ebron*, 292 Conn. 656, 681–82, 975 A.2d 17 (2009), in which this court held that unpreserved claims of instructional error are reviewable on appeal under *Golding* unless the error was induced or invited by the defense. The defendant claims that, under *Ebron*, in order to waive appellate review of an unpreserved instructional error claim, "it is not enough merely to fail to object, or acquiesce in the instructional error. Rather, the [defense] must act affirmatively to induce the trial court to instruct, either by requesting a given charge, or by explicitly and on the record arguing that the charge is proper." In addition, the defendant claims that *defense counsel* may not waive his client's right to a proper jury instruction on an element of a charged offense because that right is of constitutional magnitude and is personal to the defendant and, therefore, may be waived only by the defendant herself.

The state responds that the Appellate Court properly concluded that the defendant had waived her claim of instructional error because defense counsel "had participated in the multiphase process of drafting the charge . . . [and] had been given numerous opportunities to review fully the charge and offer comment or objection [thereto] . . . ." Alternatively, the state argues that the trial court's instruction on the element of "material fact" was correct, and, even if the instruction was not correct, any error was harmless beyond a reasonable doubt. We conclude that the Appellate Court properly determined that the defendant had waived her claim of instructional error.

We begin by setting forth our standard of review. The defendant challenges the legal standard for waiver applied by the Appellate Court, and, therefore, her claim

raises an issue of law over which we exercise plenary review. See, e.g., *State* v. *Fernando A.*, 294 Conn. 1, 13, 981 A.2d 427 (2009).

The record reveals the following additional facts and procedural history. On October 30, 2006, the trial court conducted a charging conference on the record, during which it summarized the matters discussed at the previous charging conferences. The trial court noted that, on October 26, 2006, the parties were given a " 'boilerplate' " charge (first draft) and were told that the court, with the input of counsel, would "edit it as [they went] along." On October 27, 2006, the defense submitted a request to charge,[5] and, on the same day, the trial court delivered to counsel a copy of its initial instructions on workers' compensation fraud (second draft), which included the definition of the term "material fact" that the defendant challenged in her appeal to the Appellate Court. The trial court further noted that, on October 30, 2006, prior to going on the record, the parties had discussed the second draft and, on the basis of "the language in that [draft], both sides decided to withdraw their written requests, feeling that the court's charge was sufficient." In addition, "[the] [d]efense requested an additional sentence in the instruction on knowledge . . . [and] some language on the use of inferences to support the finding of an element." Those requests were granted. A revised version of the charge (third draft) was subsequently given to both parties at approximately 12 p.m. on October 30, 2006.[6]

After concluding its summary of the charging conferences on the record, the trial court asked the parties

---

[5] The request to charge filed by the defense addressed only the meaning of an "injury aris[ing] out of employment . . . ." The request did not address the meaning of "material fact," and the defense did not submit any supplemental requests to charge.

[6] There were no changes to the definition of the term "material fact" in the third draft.

if "[they had] any additions, subtractions, or disagreements?" The defense did not raise any issues in response to this question. The trial court then stated that the parties would have the opportunity to review the third draft of the charge to determine whether any changes needed to be made. Later during the conference, the following colloquy occurred between the trial court and defense counsel:

"The Court: . . . Did [counsel] read the . . . third draft of the instruction?

"[Defense Counsel]: Yes, Your Honor.

"The Court: Any problems with that?

"[Defense Counsel]: Just a typo concerning the [dollar value of the workers' compensation benefits allegedly received by the defendant].

* * *

"The Court: Okay. Is there anything else about the instruction other than fixing the numbers?

"[Defense Counsel]: No, Your Honor."

The next morning, on October 31, 2006, the trial court distributed to counsel the fourth and final version of its charge (final draft)[7] and inquired whether, "[o]ther than what we've already discussed, [does] anybody find any problems with it, any typos?" Defense counsel replied, "[n]o, Your Honor." The parties then proceeded to closing arguments. Following the parties' closing arguments, the trial court charged the jury. The trial court's charge included the same definition of the term "material fact" that was contained in the second, third and final drafts of the charge. At the conclusion of the charge, the trial court again asked counsel, "[o]ther than what's previously been stated, [do you have] any

---

[7] There were no changes to the definition of the term "material fact" in the final draft.

exceptions to the instruction?" Defense counsel replied, "[n]o, Your Honor."

In the present case, the record is adequate for review and the claim of instructional error on an element of the crime is of constitutional magnitude because it implicates the due process rights of the defendant. See *State* v. *Fabricatore*, 281 Conn. 469, 477, 915 A.2d 872 (2007). We conclude, however, on the basis of our recent decision in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), that the defendant has waived her claim of instructional error and, therefore, that it fails under the third prong of *Golding*. See id., 467 ("[a] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial" [internal quotation marks omitted]).

In *Kitchens*, we expressly overruled *Ebron*; id., 472–73; and concluded that, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83. In the present case, the trial court provided defense counsel with three drafts (the second, third and final drafts) of its proposed instructions on workers' compensation fraud, all of which included the same definition of the term "material fact" that the defendant challenged in her appeal to the Appellate Court. The first of these three drafts was distributed to counsel on October 27, 2006. Defense counsel, therefore, had three

days to review the proposed instructions before the charging conference on October 30, 2006. The record indicates that defense counsel, in fact, did review the first of those three drafts, as defense counsel withdrew his request to charge and accepted the trial court's charge at the charging conference. The trial court distributed the second of these three drafts of the charge to counsel at approximately 12 p.m. on October 30, 2006, and the record indicates that defense counsel reviewed that draft as well. Defense counsel explicitly stated so on the record, and his review was thorough enough to spot a typographical error concerning the dollar value of the workers' compensation benefits allegedly received by the defendant. The last or "final" draft of the charge was distributed to counsel on October 31, 2006, and the trial court gave counsel two more opportunities to raise issues with or object to the charge on that day. Defense counsel accepted the charge on both occasions. In sum, defense counsel had meaningful and multiple opportunities to review the trial court's instructions and to object to any language therein, and, in response to solicitation by the trial court, repeatedly indicated his satisfaction with the charge. Thus, in accordance with our holding in *Kitchens*, we conclude that the defendant waived her claim of instructional error.

Our conclusion is not altered by the fact that the challenged definition of "material fact" was allegedly never discussed during the various charging conferences. *Kitchens* indicates that the *opportunity* for meaningful review and discussion can give rise to a determination that a defendant has implicitly waived his or her constitutional right to challenge the instructions on direct appeal. See id. Actual discussion of the instruction later challenged is not required. In addition, we conclude that there is no merit to the defendant's claim that *defense counsel* may not waive a jury instruc-

tion claim on behalf of his client, the defendant. It is well settled that counsel has the authority to waive such a right and that the court can rely on counsel's representations regarding the propriety of the instructions at any stage of the proceeding. As we stated in *State* v. *Holness*, 289 Conn. 535, 958 A.2d 754 (2008), in which we considered whether a jury instruction was adequate to safeguard the defendant's constitutional rights, the requirement of a knowing and intelligent waiver by the defendant himself is "inapplicable when . . . counsel has waived a potential constitutional claim in the exercise of his or her professional judgment." Id., 544. With respect to the defendant's jury instruction claim in the present appeal, "the trial court was entitled to presume that defense counsel was familiar with [the law] and had acted competently in determining that the . . . instruction was adequate to safeguard the defendant's [constitutional] rights. To conclude otherwise would require the trial court to canvass defense counsel with respect to counsel's understanding of the relevant constitutional principles before accepting counsel's agreement on how to proceed. . . . [T]here is nothing in our criminal law that supports such a requirement." Id.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and NORCOTT and VERTEFEUILLE, Js., concurred.

KATZ, J., dissenting. With its decision, the majority continues its attack on what was once a foundation of this court's jurisprudence: review of unpreserved constitutional errors pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[1] In doing so, it

---

[1] Until the majority's recent evisceration of this doctrine, pursuant to *Golding*, a defendant could prevail on an unpreserved claim if: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the

widens the fissure cleft by *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), in this court's ability to rectify violations of criminal defendants' constitutional rights. And so, I go "[o]nce more unto the breach, dear friends, once more . . . ."[2]

I would conclude that the defendant, Nazra Mungroo, did not waive review of her constitutional claim pursuant to *Golding*. It is apparent from the record that counsel for the defendant believed that the state's case alleging fraudulent receipt of workers' compensation benefits turned on whether the state had proven that the defendant had misrepresented or omitted a material fact and was aware of the proper definition of the term "material fact." At the conclusion of the evidentiary portion of the trial, defense counsel filed a motion for a judgment of acquittal, for which the only stated basis was the defendant's claim that "the [s]tate [had] presented no evidence of which material fact or facts the defendant intentionally misrepresented, or intentionally failed to disclose, when making a claim for benefits. There is therefore no evidence for the jury to find an essential element of this charge: that she made an intentional misrepresentation or omission affecting her claim to benefits." At the hearing concerning that motion, defense counsel had argued that there was "no way that the jury can evaluate whether [the defendant] made a misrepresentation or an omission of a material fact." Later, defense counsel further argued: "[T]he state has to prove that [the defendant] said A, B, and C, but left out D, E, and F. And that had D, E, and F been disclosed, *then the situation would have been different*. In other

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Internal quotation marks omitted.) *State* v. *Tomas D.*, 296 Conn. 476, 503, 995 A.2d 583 (2010).

[2] W. Shakespeare, Henry V, act 3, sc. 1.

words, they're material." (Emphasis added.) Defense counsel nonetheless acquiesced to a set of jury instructions under which, in contravention of the well settled definition of "material fact,"[3] that term was defined only as "an important or essential fact . . . ."

Having based much of his case on contending that the defendant had not omitted any *material* fact, it defies logic to presume that defense counsel wanted the jury to have a *less* stringent definition of material fact before them as they deliberated. We are therefore left with two possible explanations for why defense counsel failed to object to the improper definition of material fact included in the jury charge: (1) gamesmanship, specifically, a desire to create a ground for appeal by building error into the trial; or (2) mere inadvertence. As I previously stated in *State* v. *Kitchens*, supra, 299 Conn. 522 (*Katz, J.*, concurring), any defense attorney who made such a choice out of gamesmanship would be both incompetent and unethical—incompetent because appellate court reversals of convictions based on *Golding* review of instructional errors are extremely rare,[4] and unethical because, considering that low reversal rate and the fact that defendants may have to wait years

___

[3] See *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002) ("[a] material fact has been defined adequately and simply as a fact which will make a difference in the result of the case" [internal quotation marks omitted]).

[4] "From January 1, 2000, to May 5, 2010, this court considered approximately 140 criminal appeals in which a defendant requested *Golding* review, not including cases in which the court determined that the defendant was entitled to other types of appellate review. Of those 140 cases, approximately 70 involved claims for *Golding* review of instructional errors, in which the court found reversible error in only 6 cases.

"During the same period, the Appellate Court considered approximately 550 criminal appeals in which a defendant requested *Golding* review or the court, sua sponte, engaged in *Golding* review, not including cases in which the court determined that another legal framework governed its review. Of those 550 cases, approximately 250 involved claims for *Golding* review of instructional error, and the court found reversible error in only 17 cases." *State* v. *Kitchens*, supra, 299 Conn. 522 n.17 (*Katz, J.*, concurring).

to obtain appellate review, such a strategy would in no way serve the defendant's interests.

Because this court is bound to presume that, in the absence of clear evidence to the contrary, attorneys act both ethically and competently; see id., 520 (*Katz, J.,* concurring); *State* v. *Cator,* 256 Conn. 785, 794, 781 A.2d 285 (2001); I am compelled to conclude that defense counsel's failure to challenge the definition of materiality was merely inadvertent. Moreover, considering the in-depth discussion of the material fact element and the well established definition of a material fact, I would conclude that the trial court's failure to provide that definition similarly was inadvertent. Pursuant to the majority's decision, however, the defendant *alone* bears the consequence of a mistake that eluded both defense counsel and the trial court. Because *Golding* review was intended to provide an avenue for the review and correction of precisely the type of unintended mistake evident in this case, I cannot join the majority in foreclosing access to that review through a finding of waiver.[5]

Accordingly, I dissent.

PALMER, J., dissenting. I agree with all of the substantive points that Justice Katz raises in her dissent. For the reasons set forth therein, as well as for the reasons set forth in her concurrence in *State* v. *Kitch-*

---

[5] The sole certified question on appeal is: "Did the Appellate Court properly determine that the defendant had waived her claim of error regarding a jury instruction?" *State* v. *Mungroo,* 291 Conn. 907, 969 A.2d 172 (2009). Accordingly, I decline to review the state's alternate ground for affirmance that it was not reasonably possible that the jury was misled by the improper definition of material fact. See *State* v. *Hammond,* 257 Conn. 610, 614–15 n.9, 778 A.2d 108 (2001) (declining to review alternate ground for affirmance that was not question certified for appeal). Instead, I would reverse the judgment of the Appellate Court and remand the case to that court for consideration of the defendant's claim pursuant to *State* v. *Golding,* supra, 213 Conn. 239–40.

*ens*, 299 Conn. 447, 500,  A.3d  (2011) (*Katz, J.*, concurring), and in my concurrence in *Kitchens*; id., 530 (*Palmer, J.*, concurring); I also dissent.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.