## STATE OF CONNECTICUT v. DARRYL W.
### (SC 18396)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Harper and Vertefeuille, Js.*

* This case was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Norcott, Palmer, Zarella, McLachlan, Harper and Vertefeuille. Although Justice Norcott was not present when the case was argued before the court, he read the record, briefs and transcript of oral argument prior to participating in this decision.

Argued September 21, 2011—officially released January 10, 2012

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, was *John A. Connelly*, former state's attorney, *Maureen Platt*, state's attorney, and *John Davenport*, senior assistant state's attorney, for the appellee (state).

HARPER, J. The defendant, Darryl W.,[1] appeals directly to this court, pursuant to General Statutes § 51-199 (b) (3), from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit aggravated sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70a (a) (1),[2] sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B) and kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a.[3] The defendant also appeals from the trial court's judgment finding him guilty of violation of probation based on his conviction of the aforementioned criminal offenses. The defendant raises two issues on appeal. He claims first that the trial court improperly instructed the jury regarding the elements of §§ 53a-70a (a) (1) and 53a-92a and regarding his affirmative defense to § 53a-92a under General Statutes § 53a-16a.[4] This claim specifically concerns the legal standards for

[1] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] General Statutes § 53a-70a (a) provides in relevant part: "A person is guilty of aggravated sexual assault in the first degree when such person commits sexual assault in the first degree as provided in section 53a-70, and in the commission of such offense (1) such person uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a deadly weapon . . . ." See footnote 12 of this opinion for the definition of deadly weapon.

[3] General Statutes § 53a-92a (a) provides in relevant part: "A person is guilty of kidnapping in the first degree with a firearm when he commits kidnapping in the first degree as provided in section 53a-92, and in the commission of said crime he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm. . . ." See footnote 12 of this opinion for the definitions of pistol and firearm.

[4] General Statutes § 53a-16a provides in relevant part: "In any prosecution for an offense under section . . . 53a-92a . . . it shall be an affirmative defense that the pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged . . . ."

determining whether a weapon may be considered operable under these statutes.[5] The defendant also claims that certain improper comments by the senior assistant state's attorney during closing argument deprived him of his right to a fair trial. We conclude that the defendant failed to preserve his jury instruction claim and is not entitled to review on any basis asserted. We further conclude that there was no prosecutorial impropriety. Accordingly, we affirm the judgments.

The record reveals the following procedural history and facts as the jury reasonably could have found them. The defendant is married to the sister of the victim, D. Following the loss of her house due to foreclosure, D, along with her husband and two children, resided with the defendant, his wife and their four children for several months. D and her family then moved out of the defendant's house to live with her parents and subsequently began looking for a house to buy. On the day of the incident, the defendant tricked D, whom he had offered to help find a house, into meeting him alone at a commuter parking lot in Waterbury and driving with him to his house. When they arrived, the defendant asked D to help carry a box into the house. Once inside, he held D at gunpoint, handcuffed her and brought her to a bedroom. There, he removed her pants, placed duct tape over her mouth, kissed her breasts, touched her vagina, briefly tied her feet to a bed, removed his pants and climbed on top of her. The defendant stopped short

[5] We note that although the trial court and the parties use variations of the term "operable" as a generic shorthand device for framing the question of whether the weapon in the present case was capable of discharging a shot for purposes of §§ 53a-16a, 53a-70a (a) (1) and/or 53a-92a, this language does not appear in the relevant statutory texts. These shorthand terms, while useful, risk masking subtle but potentially significant differences expressed by the actual language of the several statutes to which the terms variously refer. Although we use variations of the term operable in this opinion to be consistent with the arguments made, we have taken care in each instance to use the term with reference to a specific statutory provision.

of intercourse, saying he "couldn't do this," and subsequently agreed to let D leave after she brought him back to his vehicle in the commuter lot.

The gun that the defendant used was an air pistol that the police later seized in a search of a vehicle belonging to the defendant. The pistol was designed to shoot BBs propelled by compressed carbon dioxide, or $CO_2$. At the time the police seized it, the pistol contained neither BBs nor a $CO_2$ cartridge, but a later test confirmed that it was capable of firing when equipped with BBs and a cartridge.

At trial, the defendant testified that he and D had previous romantic encounters and that on the day in question they engaged in consensual intimate activity but stopped after deciding that doing so was wrong. The defendant also sought to show that the seized air pistol was not on his person at the time of the incident but had in fact been stored in his vehicle for several months. In the alternative, for purposes of the charge of kidnapping in the first degree with a firearm, he asserted an affirmative defense that, even if he had been armed with the air pistol, it was inoperable.

Pursuant to the amended information that the state filed after the close of its case, the trial court instructed the jury that it did not need to find that the defendant actually possessed an operable pistol to convict him on the kidnapping and aggravated sexual assault charges, which required only that he represented by words or conduct that he possessed such a weapon. The court further instructed the jury, pursuant to the defendant's affirmative defense, that it should acquit him of the kidnapping charge if it found that he proved the air pistol was not operable.[6] The jury returned a verdict

[6] Regarding the issue of operability under § 53a-92a, the court instructed the jury: "The third essential element is that, during the abduction, the defendant represented by his words or conduct that he possessed a pistol. A 'pistol' is defined by statute as any firearm having a barrel less than twelve inches. A 'firearm' is defined by statute to mean in relevant part a weapon,

convicting the defendant on all counts.[7] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant raises two related claims with respect to the jury instructions regarding the pistol's operability for purposes of aggravated sexual assault in the first degree under § 53a-70a (a) (1) and kidnapping in the first degree with a firearm under § 53a-92a. First, he claims that the trial court improperly failed to instruct the jury that the state bore the burden of proving operability as an element of each of these offenses. Second, he claims that the trial court improperly failed to

whether loaded or unloaded, from which a shot may be discharged. 'Represented by words or conduct' means that the defendant did or said something to indicate to the complainant [D] that he possessed a pistol. It is not necessary that the state prove that the defendant actually possessed such a weapon or that the weapon was actually capable of discharging a shot.

"With respect to this charge, the defendant has asserted an affirmative defense under [§ 53a-16a] that any pistol displayed by him was not a weapon from which a shot could be discharged. Section 53a-16a provides in relevant part that it shall be an affirmative defense that the pistol was not a weapon from which a shot could be discharged. In this case, such an affirmative defense, if proven, is a complete bar to a conviction for the offense of kidnapping in the first degree with a firearm."

Regarding operability for purposes of attempted aggravated sexual assault in the first degree under § 53a-70a (a) (1), the court stated: "The third essential element which the state must prove beyond a reasonable doubt is that the defendant, while attempting to commit the sexual assault, represented by words or conduct that he possessed a deadly weapon. For purposes of this case, the term 'deadly weapon' means any weapon, whether loaded or unloaded, from which a shot may be discharged. 'Represented by words or conduct' means that the defendant did or said something to indicate to the complainant [D] that he had a deadly weapon in his possession. It is not necessary that the state prove that the defendant actually possessed such a weapon or that the weapon was actually capable of discharging a shot."

[7] On the basis of these offenses, the trial court further found that the defendant was in violation of probation. The defendant does not raise any claims on appeal relating to this finding. Accordingly, our determination with respect to the defendant's appeal from the judgment of conviction on the criminal charges provides an adequate basis to affirm the trial court's judgment convicting the defendant of violation of probation.

instruct the jury that he could prove inoperability for purposes of his affirmative defense to § 53a-92a by showing either that the pistol did not contain BBs and therefore was not loaded or that it did not contain a $CO_2$ cartridge and, therefore, lacked a component necessary for discharging a shot.

To support this claim, the defendant proposes a statutory gloss that relies on mutually reinforcing interpretations of the offenses and of the affirmative defense to § 53a-92a. He contends that the language of the two substantive offenses, though ambiguous, should be read to require the state to prove that the defendant actually was armed with a pistol and that he therefore could not properly be convicted for only representing that he possessed one.[8] He suggests that allowing conviction

[8] The defendant emphasizes parallel language and punctuation in the two statutes. Section 53a-70a (a) (1) applies if a person who commits sexual assault in the first degree "uses or is armed with and threatens the use of or displays or represents by such person's words or conduct that such person possesses a deadly weapon . . . ." Section 53a-92a (a) contains a comparable condition: "and in the commission of said crime he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm." Unlike some similarly worded statutes; see, e.g., General Statutes §§ 53-202k and 53a-134 (a); these provisions do not employ commas to delineate the several scenarios that satisfy their respective elements. The defendant contends that the statutes therefore should be read such that these elements would be met only if the state proved that the defendant (1) used a pistol or (2) was armed with a pistol and either (a) threatened the use of or (b) displayed or (c) represented by his words or conduct that he possesses a pistol. Per this construction, the state would invariably have to prove that a defendant either used or was armed with an operable pistol.

The state contends that the defendant has waived this claim and, alternatively, that the statutes would be satisfied if the defendant (1) used or (2) was armed with and threatened the use of or (3) displayed or (4) represented by his words or conduct that he possessed a pistol. Because we agree with the state that the defendant has waived this claim, we express no opinion as to the proper construction of § 53a-70a (a) (1) or § 53a-92a.

That said, we feel compelled to note that in the section of her appellate brief addressing this issue the state's appellate counsel, Assistant State's Attorney Melissa L. Streeto, purported to provide quotations of §§ 53a-70a (a) (1) and 53a-92a but inserted commas supporting her statutory construction without any indication that alterations had been made. In response to ques-

merely for claiming to have a gun would produce the absurd result that § 53a-16a would potentially provide an affirmative defense against § 53a-92a for a defendant armed with a nonfunctional pistol but not for one with no pistol at all. The defendant further contends that the affirmative defense under § 53a-16a, the text of which he claims is also ambiguous, should be interpreted in this statutory scheme to preclude conviction—even once the statutory definition of "firearm" has been met—if a defendant can show that the firearm was not loaded and, therefore, not capable of discharging a shot.[9]

The defendant contends that he preserved both objections but, in the alternative, he seeks *Golding* review[10]

tions at oral argument regarding the accuracy of these quotations, she explained, in justification of the improper insertions, that "I put those there because that is how the statute should be read." No matter how a statute should be read, it is for the legislature—and not counsel—to determine how the statute should be written. We strongly disapprove of the tactic employed here, which was at the very least misleading, and we remind counsel that they are obligated to indicate, through the use of brackets or explanatory parentheticals or otherwise, any modification to quoted materials. Contrary to Assistant State's Attorney Streeto's suggestion at oral argument, and notwithstanding her apology for misleading the court, this obligation is not met by including unmodified copies of the relevant texts in an appendix.

[9] The defendant points out that the Penal Code defines " '[f]irearm' " as "any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, *whether loaded or unloaded* from which a shot may be discharged"; (emphasis added) General Statutes § 53a-3 (19); while § 53a-16a provides that "it shall be an affirmative defense that the pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged," with no mention of whether the gun is loaded. The defendant contends that operability for purposes of the affirmative defense may be defeated by removing ammunition, whereas an unloaded weapon may still be a firearm for purposes of the substantive offense. The state, which does not assert that the defendant waived this claim, counters that § 53a-16a implicitly incorporates the "whether loaded or unloaded" language of the definition of a firearm into the affirmative defense. Beyond concluding that the instruction was not plain error, we express no opinion as to this issue. We also express no opinion as to the defendant's claim that a $CO_2$ cartridge is a component of an air pistol rather than an element of the ammunition, as it appears the jury may have concluded.

[10] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

as to the first claim and plain error review as to the second claim. We conclude that the defendant has preserved neither claim, that his first claim cannot succeed under *Golding* because it has been waived and that the second claim does not merit reversal for plain error.

The record reveals the following additional facts and procedural history relevant to these claims. After the close of its case, the state sought to amend the information with respect to § 53a-92a, kidnapping in the first degree with a firearm. The proposed substitute information replaced an allegation that "during the commission of said crime [the defendant] *was armed with* and represented by his words or conduct that he possessed a pistol"; (emphasis added); with the narrower charge that "during the commission of said crime he represented by his words or conduct that he possessed a pistol," thereby avoiding the need to prove the defendant was armed with an operable pistol. The defendant objected, arguing that the amended count would prejudicially preclude him from raising an affirmative defense under § 53a-16a that any pistol he may have possessed was "not a weapon from which a shot could be discharged . . . ." The trial court, citing this court's decision in *State* v. *Hawthorne*, 175 Conn. 569, 402 A.2d 759 (1978), ruled that the defendant still could raise this affirmative defense even though the state did not allege that he was armed with a pistol.[11] On the basis

[11] This court held in *State* v. *Hawthorne*, supra, 175 Conn. 573–74, that "the operability of a firearm is not an essential element of robbery in the first degree under subsection (a) (4) of [General Statutes] § 53a-134. We also recognize[d] that this subsection, by its terms, makes the inoperability of a firearm an affirmative defense by means of which a defendant, who chooses to avail himself of this defense, may reduce the crime from robbery in the first degree to robbery in the second degree." In light of our conclusion that the defendant is not entitled to *Golding* or plain error review, we express no opinion regarding the applicability of our holding in *Hawthorne* to the statutes at issue in the present case. Cf. *State* v. *Nieves*, 89 Conn. App. 410, 423–24, 873 A.2d 1066 (holding that defendant was not entitled to benefit of inoperability defense against § 53a-134 [a] [4] where charging language alleged only that defendant represented that he had firearm), cert. denied, 275 Conn. 906, 882 A.2d 679 (2005).

of this ruling, the defendant withdrew his objection. The court then confirmed that, with respect to the charge of attempted aggravated sexual assault in the first degree under § 53a-70a (a) (1), the state was "also simply claiming that [the defendant] represented by his words or conduct that he had a deadly weapon." The defendant raised no objection and acknowledged that no affirmative defense applied to this count.

Shortly thereafter, while discussing a motion for a judgment of acquittal filed by the defendant, the trial court expressed its understanding that under the amended charges "the state no longer has the burden to show operability." The defendant replied, "I would not disagree with that." He argued instead that because there was no evidence that the pistol contained a $CO_2$ cartridge, his own burden of showing inoperability for purposes of his affirmative defense under § 53a-16a had been met. The court denied his motion.

Following the conclusion of evidence, the trial court provided counsel with copies of a draft jury charge. Per the defendant's request, that charge included an affirmative defense to the kidnapping charge and definitions of the terms "firearm," "deadly weapon" and "pistol," which the trial court drew from the relevant statutory text and Penal Code definitions.[12] The next morning, the court held a charging conference. The defendant expressed his satisfaction with the proposed instructions.

---

[12] As we have noted previously; see footnotes 2, 3 and 4 of this opinion; § 53a-70a (a) (1) refers to a "deadly weapon," whereas §§ 53a-92a and 53a-16a refer to a "firearm." General Statutes § 53a-3 provides in relevant part: "Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . .

"(6) 'Deadly weapon' means any weapon, whether loaded or unloaded, from which a shot may be discharged . . . .

"(18) 'Pistol' or 'revolver' means any firearm having a barrel less than twelve inches;

"(19) 'Firearm' means any . . . weapon, whether loaded or unloaded from which a shot may be discharged . . . ."

In his closing argument, the defendant contended that for the pistol to be operable, it required both BBs and a $CO_2$ cartridge. He then distinguished between the BBs and the cartridge, arguing that the BBs were ammunition, whereas the cartridge was an essential component of the gun itself.

As we previously have noted, following the close of evidence the trial court instructed the jury, in accordance with the amended information, that for purposes of kidnapping in the first degree with a firearm and attempted aggravated sexual assault in the first degree it was not necessary for the state to prove that the defendant actually possessed a firearm or deadly weapon or that such a weapon was actually capable of discharging a shot. See footnote 6 of this opinion. The court also instructed the jury that the defendant had asserted, as an affirmative defense to the charge of kidnapping in the first degree with a firearm, that any pistol displayed by him was not a weapon from which a shot could be discharged. Both the state and the defendant indicated, upon the court's inquiry, that they took no exception to these instructions.

During the course of deliberations, the jury submitted a note asking, "[d]oes the gun need to be theoretically operable or actually operable at the time the crime was committed?" In the discussion that ensued, the defendant opined that "I think you would have to answer that question in my opinion, no, to both of those," reasoning that the pistol was not actually operable without BBs and a $CO_2$ cartridge and that it was not theoretically operable because it could not have fired even if a BB were present. The court responded that the defendant's argument was unsupported because, under the statutory definition of a firearm, it was irrelevant whether the gun was loaded. The defendant replied, "[o]kay." The court then expressed its view that the legislature clearly intended operability

not to turn on whether the pistol contained ammunition but that the case involved a reasonable dispute over whether the $CO_2$ cartridge should be construed as ammunition or a component of the pistol. The court then characterized this as a question of fact for the jury and asked if either party wished to be heard further; the defendant responded, "[n]o, Your Honor."

Ultimately, the court decided to reread the statutory definition of a firearm that it previously had given the jury. The defendant expressed concern that doing so might cause the jury to fail to consider the definition in the context of the facts and argument made in the present case,[13] but the court indicated that such an instruction was unnecessary because its previous instruction had made that point clear and the jury's question was seeking a clarification on the law. Thereafter, the court proceeded to reinstruct the jury that a firearm is "any weapon, whether loaded or unloaded, from which a shot may be discharged."

At the sentencing hearing, the defendant moved for a judgment of acquittal with respect to the charge of kidnapping in the first degree with a firearm, arguing that evidence that the pistol contained no $CO_2$ cartridge demonstrated that it was inoperable for purposes of his affirmative defense under § 53a-16a. He made no express claim at this time that the absence of BBs rendered the weapon inoperable. The defendant also

---

[13] The defendant presented his concern by stating: "Your Honor, I guess, the only thing—other thing I would suggest is if the court was going to give them that instruction that that's the definition that they keep, that they use that definition in the context of it and in addition to the arguments that were made. I mean, I think you can take that as a matter of law, they still have to use the facts of the case to decide whether or not the arguments fit into the law that you're giving them to look at so . . . ." The defendant later elaborated, stating that "I'm thinking that by them getting that vanilla boilerplate definition that they're just gonna look at that within—and not take it in the context that they maybe would have, having that definition and hearing the argument so . . . ."

moved for a new trial on the ground that the court had not appropriately responded to the jury's question regarding whether the weapon needed to be theoretically or actually operable. The court denied the defendant's motions. With these facts in mind, we turn to the defendant's specific contentions.

## A

The defendant first claims that the court improperly instructed the jury regarding the elements of aggravated sexual assault in the first degree under § 53a-70a (a) (1) and kidnapping in the first degree with a firearm under § 53a-92a by telling the jury that it need not find that the defendant actually possessed a "weapon, whether loaded or unloaded, from which a shot may be discharged" to convict him on these counts. The defendant suggests that this claim is preserved by his repeated references to inoperability as an affirmative defense; in the alternative he asks for *Golding* review.[14] We conclude that this claim is unpreserved and that the defendant cannot prevail under *Golding*.

"[A] fundamental element of due process of law is the right of a defendant charged with a crime to establish a defense. . . . Where, as here, the challenged jury instructions involve a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict. . . . A challenge to the validity of jury instruc-

---

[14] Pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.)

tions presents a question of law over which [we have] plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 598–99, 10 A.3d 1005 (2011).

As the rules of practice make clear, however, "[a]n appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection." Practice Book § 16-20. In the present case, the defendant did not submit a request to charge addressing the elements of these offenses, nor did he take exception to the jury instructions either at the charging conference or after the charges were read to the jury. At no time thereafter did the defendant indicate that the jury must be instructed on operability as an element of §§ 53a-70a (a) (1) and 53a-92a rather than as a condition of the affirmative defense under § 53a-16a. Accordingly, the defendant has not preserved this claim.

In reviewing unpreserved claims under *Golding*, we have held that "[a] defendant in a criminal prosecution may waive one or more of his or her fundamental rights." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007).[15] "[A] constitutional claim that has been waived does not

---

[15] The defendant's contrary claim that the right to proper instruction on the elements of an offense is fundamental and therefore not waivable by counsel is unavailing. "It is well settled that counsel has the authority to waive such a right and that the court can rely on counsel's representations regarding the propriety of the instructions at any stage of the proceeding. . . . [T]he requirement of a knowing and intelligent waiver by the defendant himself is inapplicable when . . . counsel has waived a potential constitutional claim in the exercise of his or her professional judgment." (Citation omitted; internal quotation marks omitted.) *State* v. *Mungroo*, 299 Conn. 667, 677, 11 A.3d 132 (2011).

satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Holness,* 289 Conn. 535, 543, 958 A.2d 754 (2008).

We conclude that the defendant's claim fails to satisfy the third prong of *Golding* because we agree with the state that it was waived at trial. As we recently observed, in addition to express waiver, implicit waiver of a claim of instructional error may properly be found where "the defense expressly acknowledged and agreed by words or conduct to the instruction challenged on appeal." *State* v. *Kitchens,* 299 Conn. 447, 475, 10 A.3d 942 (2011); *State* v. *Holness,* supra, 289 Conn. 543 (denying *Golding* review where "defense counsel clearly and unequivocally agreed to the limiting instruction that the trial court gave to the jury").

The defendant cannot prevail under *Golding* with respect to the aggravated sexual assault charge under § 53a-70a (a) (1) because he impliedly waived this claim. The defendant raised no objection when the state confirmed that, for that charge, it was "also simply claiming that [the defendant] represented by his words or conduct that he had a deadly weapon." The defendant later expressly assented to the jury instructions, both before and after they were read, after having ample opportunity for review. See *State* v. *Kitchens,* supra, 299 Conn. 475. He also argued the issue of operability at length during his closing argument, presenting it explicitly and exclusively as an affirmative defense to § 53a-92a. Accordingly, when the issue of operability with respect to § 53a-70a (a) (1) was squarely before the defendant on several occasions, the defendant's conduct manifested a clear relinquishment of his present claim.

With regard to the kidnapping charge under § 53a-92a, the defendant not only satisfied the conditions of implied waiver under *Kitchens* by indicating his satisfaction with the jury charge, but he also expressly waived the claim by explicitly assenting to the amended information, which eliminated the state's burden of proving he was armed with an operable firearm, and requesting an affirmative defense under which *he* would bear the burden of proving that the air pistol was *not* a weapon from which a shot could be discharged. See *State* v. *Fabricatore*, supra, 281 Conn. 481 (*Golding* review was denied when "defense counsel not only failed to object to the instruction as given or to the state's original request to charge the jury with the duty to retreat, but clearly expressed his satisfaction with that instruction, and in fact subsequently argued that the instruction as given was proper. Indeed, defense counsel himself addressed the duty to retreat in his own summation."). During his closing argument, the defendant argued that "operability is an affirmative defense to the charge of kidnapping in the first degree with a firearm" and later contended that "I think I can meet my burden of preponderance of the evidence with regard to the operability of that gun." With the benefit of hindsight, the defendant attempts to amend this unsuccessful trial strategy by arguing that § 53a-92a invariably requires the state to bear the burden of proving the defendant was armed with a firearm. Regardless of whether the defendant's proposed statutory construction has any merit, it is flatly at odds with his own express position at trial. Under these circumstances, we cannot conclude that a clear constitutional violation clearly deprived the defendant of a fair trial. See *State* v. *Holness*, supra, 289 Conn. 543.

## B

The defendant claims additionally that the court improperly instructed the jury regarding inoperability

as an affirmative defense to kidnapping in the first degree with a firearm under § 53a-92a. Specifically, he contends that the affirmative defense under § 53a-16a, that the firearm was not one "from which a shot could be discharged," should be construed as a matter of law to provide an affirmative defense when a defendant is armed either with an unloaded firearm or with a firearm that is mechanically incapable of being fired even if it is loaded. The defendant concedes that the term "firearm" is used in both the substantive offense and affirmative defense and that this term is defined in such a way as to make the question of whether the weapon is loaded irrelevant. He nevertheless contends that in order to make the statutory scheme coherent, the affirmative defense must be construed to allow a defendant to prevail if he establishes that the weapon is unloaded. The trial court's failure to give an instruction endorsing the "unloaded" prong of this construction was therefore, the defendant reasons, improper. The defendant further contends that the court's response to the jury's subsequent question regarding whether the air pistol needed to be actually or theoretically operable was inadequate because it did not clarify that either lack of ammunition (BBs) or a missing mechanical component ($CO_2$ cartridge) would be sufficient to establish inoperability for purposes of the affirmative defense.[16] We conclude that this claim is unpreserved and that it does not warrant reversal for plain error.

To preserve an exception to a jury instruction for further review under Practice Book § 16-20, a party must either submit a written request to charge or "state distinctly the matter objected to and the ground of objection." Although the defendant did present in his closing argument to the jury, albeit in an inarticulate and undeveloped manner, the theory that he advances on appeal, none of his representations or arguments to

---

[16] See footnote 9 of this opinion.

the court foreshadowed or subsequently reiterated this claim to the jury. The defendant never asked the court to instruct the jury that, should it find the pistol was unloaded, it must consequently find that the pistol "was not a weapon from which a shot could be discharged" pursuant to § 53a-16a. Nor did the defendant make a distinct request or objection during the discussion of the jury's request for clarification regarding "theoretical" or "actual" operability. Although the defendant opined that the evidence satisfied both theories, he immediately acceded to the trial court's summary response that the argument made in his closing argument was legally unsupportable. Furthermore, in both his motion for acquittal after the close of the state's case and his motion for a new trial following the verdict, the defendant emphasized the lack of a $CO_2$ cartridge as a basis for finding the pistol inoperable. It is our long-standing position that "[t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 758, 992 A.2d 1071 (2010), cert. denied, U.S. , 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011). Accordingly, to the extent that the defendant identified the significance of the pistol being unloaded at all, his "imprecise reference did not reasonably alert the court to the deficiencies in the charge now advanced. Counsel thus failed to state distinctly the matter objected to and the ground of objection as required . . . for appellate review." (Internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 816, 614 A.2d 414 (1992).

Because this claim is unpreserved and the defendant has not requested review of the claim under *Golding*, we turn to the defendant's alternate request to prevail by demonstrating plain error.[17] "[T]he plain error doc-

[17] We recognize that there appears to be some tension in our appellate case law as to whether reversal on the basis of plain error could be available

trine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . .

in cases where the alleged error is causally connected to the defendant's own behavior. In *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 70, 967 A.2d 41 (2009), this court held that where the defendant, personally and through counsel, had expressly waived his right to trial, reversal for plain error was not appropriate because "if there has been a valid waiver, there is no error for us to correct." (Internal quotation marks omitted.) See also *State* v. *Kitchens*, supra, 299 Conn. 474 n.18 (citing *Mozell* for this proposition in case in which defendant did not claim plain error). In other cases, this court has addressed a claim of plain error despite a finding of waiver or induced error, but nonetheless has relied in part on the defendant's action as a basis for concluding that the defendant had not demonstrated the manifest injustice or prejudice required to prevail under the plain error doctrine. See *State* v. *Coward*, 292 Conn. 296, 306, 310, 972 A.2d 691 (2009) (refusing to grant *Golding* review for induced jury instruction but still analyzing claim under plain error doctrine); *State* v. *Alston*, 272 Conn. 432, 456, 862 A.2d 817 (2005) (holding that defendant could not show manifest injustice under plain error doctrine "because he induced the trial court to take the very actions he now criticizes as erroneous, and he has failed to demonstrate any prejudice resulting therefrom"); see also *State* v. *Santiago*, 100 Conn. App. 236, 254 n.10, 917 A.2d 1051 (concluding that defendant's request for instruction using terminology later challenged resulted in induced error that precluded *Golding* review, but "[t]o the extent that the claim is amenable to review under the plain error doctrine, we are not persuaded that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that the court's use of the term victim caused the defendant to suffer manifest injustice"), cert. denied, 284 Conn. 933, 935 A.2d 152, 153 (2007); *State* v. *Maskiell*, 100 Conn. App. 507, 521, 918 A.2d 293 (The court concluded that the defendant could not seek reversal on the basis of plain error for one claim due to induced error, but with respect to another claim also deemed to be induced error, concluded: "On the basis of our review of the record, the acquittee has not demonstrated that an error exists that is so obvious that it affects the fairness and integrity of and the public confidence in the judicial proceedings or that he has been made to suffer manifest injustice. To the extent that we consider the claim under the plain error doctrine, we are not persuaded that such error exists."), cert. denied, 282 Conn. 922, 925 A.2d 1105 (2007). Because we conclude that the defendant has failed to make a claim that, even if meritorious, could constitute plain error, and because the state has not specifically contended that the defendant waived this claim, we express no opinion regarding the nature and effect of any causal connection between the defendant's conduct and the claimed error.

In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"[W]e recently clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Citation omitted; internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 204–205, 982 A.2d 620 (2009).

It is manifest from the defendant's own exposition of his claim that he cannot "demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) Id., 205. With respect to the court's initial instruction on the affirmative defense, which verbatim reiterated the language of § 53a-16a (using the term "pistol," which the court had defined for purposes of the kidnapping charge pursuant to General Statutes § 53a-3 [18]), the defendant concedes that "the reading of the statutes was technically correct" and points to no case law compelling his proposed explication of the text. Instead, the defendant essentially proposes a judicial gloss of the statutory scheme that relies heavily on isolated statements in the

legislative history of the statutes. As we recently have noted, "[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine." *State* v. *Diaz*, 302 Conn. 93, 104 n.8, 25 A.3d 594 (2011). Under these circumstances, we conclude that the defendant has failed to allege a clear, obvious and indisputable error requiring reversal, and we therefore decline to reverse the judgment on the basis of plain error.

For parallel reasons, the defendant's complaint regarding the court's response to the jury's question must also fail. The defendant frames this aspect of his claim by way of another concession: "Rereading the firearm definition—although it was correct—would be of little help to a perplexed jury." Again, regardless of whether the defendant has suffered any prejudice from a genuine error, he has failed to point to an indisputable or obvious one. The trial court's reiteration of its previous "technically correct" instruction is a remedy for juror confusion specifically endorsed in Practice Book § 42-27.[18] More significantly, the defendant points to no undeniably compelling alternative instruction the court should have given; as we discussed previously herein, the defendant's preferred instruction, never clearly voiced to the trial court, is far from indisputably correct. As a matter of plain error, we therefore cannot fault the trial court for failing to embrace it.

## II

The defendant also claims that the senior assistant state's attorney improperly asserted facts not in evi-

---

[18] Contrary to the defendant's suggestion, rereading a portion of the initial instruction is not an inherently improper response to a request for clarification. Practice Book § 42-27 ("[i]f the jury, after retiring for deliberations, requests additional instructions, the judicial authority . . . shall . . . give additional instructions necessary to respond properly to the request *or to direct the jury's attention to a portion of the original instructions*" [emphasis added]).

dence and vouched for D's credibility during its closing argument, thereby depriving the defendant of a fair trial as guaranteed by the fourteenth amendment to the United States constitution. We disagree and determine that the prosecutor's remarks were not improper.

"In analyzing claims of prosecutorial impropriety, we engage in a two step analytical process. . . . The two steps are separate and distinct. . . . We first examine whether prosecutorial impropriety occurred. . . . Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial."[19] (Citations omitted.) *State* v. *Fauci*, 282 Conn. 23, 32, 917 A.2d 978 (2007).

We begin, therefore, by considering the relevant standards of prosecutorial conduct. "[A]s the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Moreover, [i]t does not follow . . . that every use of rhetorical language or device [by the prosecutor] is improper. . . . Nevertheless, the prosecutor has a heightened duty to avoid argument that strays from the evidence or diverts the jury's attention from the facts of the case. . . . By reason of his office, he usually exercises great influence upon jurors. . . .

---

[19] The defendant concedes that he did not object to the remarks by the senior assistant state's attorney or otherwise take measures to preserve his claim. Under settled law, "a defendant who fails to preserve claims of prosecutorial misconduct need not seek to prevail under the specific requirements of *State* v. *Golding*, [supra, 213 Conn. 239–40] . . . . The reason for this is that the defendant in a claim of prosecutorial misconduct must establish that the prosecutorial misconduct was so serious as to amount to a denial of due process . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Warholic*, 278 Conn. 354, 360, 897 A.2d 569 (2006). Because we hold that there was no misconduct in the present case, we do not reach the question of whether any misconduct rose to the level of a due process violation.

"A prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence. . . . Moreover, when a prosecutor suggests a fact not in evidence, there is a risk that the jury may conclude that he or she has independent knowledge of facts that could not be presented to the jury. . . . In addition, [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . [S]uch appeals should be avoided because they have the effect of diverting the [jurors'] attention from their duty to decide the case on the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 745–46, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

The defendant points to eight comments over the course of the state's closing argument that he contends either asserted facts not in evidence or vouched for D's credibility as a witness. Of these comments, only one stands out as a potential source of concern.[20] With respect to attempted aggravated sexual assault in the first degree, the senior assistant state's attorney argued: "The question is whether or not [the defendant] took a substantial step in the course of conduct that was on its way [to intercourse and penetration]. In other words in laymen's terms, and not to be vulgar, *had he had an erection, he would have done it*. It's as simple as that.

[20] The seven other allegedly problematic statements that the defendant points to can readily be identified as viable inferences from the evidence and/or proper appeals to the jury's common sense and are therefore not improper. See *State* v. *Warholic*, supra, 278 Conn. 365 ("This court previously has concluded that the state may argue that its witnesses testified credibly, if such an argument is based on reasonable inferences drawn from the evidence. . . . In addition, jurors, in deciding cases, are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. . . . Therefore, it is entirely proper for counsel to appeal to a jury's common sense in closing remarks." [Citations omitted; internal quotation marks omitted.]).

He had her tied up on the bed spread eagle because he wanted to have intercourse with her. And that was the entire focus of the intention, it was the sole intent." (Emphasis added.) Because this comment bore directly on the mens rea requisite for the offense, was not supported by direct testimony regarding whether the defendant had an erection or was capable of achieving one and potentially resonated emotionally with the jury, it merits scrutiny.

After a review of the record, we conclude that in the context of the present case the comment by the senior assistant state's attorney was not improper. Although colored by rhetorical embellishment, the statement did not stray beyond the bounds of reasonable induction. Evidence of the defendant's actions, which included binding D, removing her pants as well as his own and climbing on top of her, provided grounds for the jury reasonably to believe that the defendant intended to complete the aggravated sexual assault. The defendant's statement that he "couldn't do this" could in this context plausibly be interpreted as an acknowledgment of temporary physical incapacity. Accordingly, the senior assistant state's attorney's comment did not hint at knowledge of facts not in evidence but, rather, presented an alternate, if hyperbolic, articulation of what the state was required to show to prove the elements of attempt.

The judgments are affirmed.

In this opinion the other justices concurred.