******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CITY OF NORWICH *v.* NORWICH HARBORVIEW
CORPORATION ET AL.
(AC 36875)

Lavine, Sheldon and Keller, Js.

*Argued December 5, 2014—officially released March 17, 2015*

(Appeal from Superior Court, judicial district of New
London, Cosgrove, J.)

*Vincent Fazzone*, for the appellant (named
defendant).

*Aimee L. Wickless*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. In this foreclosure action, the defendant Norwich Harborview Corporation[1] appeals from the judgment of foreclosure by sale rendered in favor of the plaintiff, city of Norwich, on the ground that the trial court committed plain error by approving the sale of the subject property although the court-ordered independent appraisal had not been returned to the court prior to the sale, in accordance with the Uniform Standing Orders for Foreclosure by Sale.[2] We disagree with the defendant, and accordingly affirm the judgment of the trial court.

In December of 2012, the plaintiff filed this action seeking to foreclose on municipal tax liens with respect to certain commercial property in Norwich owned by the defendant. On August 6, 2013, the defendant, through its attorney, filed a disclosure of no defense in response to the plaintiff's demand for disclosure of defense pursuant to Practice Book § 13-19. On August 30, 2013, the plaintiff filed a motion for a judgment of strict foreclosure, to which the defendant objected on September 16, 2013. In its objection, the defendant claimed that the fair market value of the subject property exceeded its debt to the plaintiff, and thus that the granting of the motion for strict foreclosure would be an abuse of discretion. The defendant also claimed in its objection that it had found a prospective buyer for the property who would be willing to purchase it for $500,000, far more than its debt to the plaintiff.[3] On September 16, 2013, the court overruled the defendant's objection to the plaintiff's motion, but instead of ordering a strict foreclosure, ordered a foreclosure by sale based on findings that the fair market value of the subject property was $700,000, while the defendant's debt to the plaintiff was only $182,978.87. The court set a sale date for the property for November 30, 2013, appointed a committee of sale and ordered that the purchaser pay a deposit of $70,000, representing 10 percent of its fair market value. The court also appointed an independent appraiser and ordered that he submit his appraisal to the court by November 20, 2013.

On October 17, 2013, the defendant filed a motion to open judgment and extend the sale date, seeking a four month extension of that date to March 29, 2014, in order to complete a short sale of the subject property. In its motion, the defendant claimed that its owner had been in contact with the attorney for the Mashantucket Pequot Tribal Nation, who had informed him that the proposed short sale would be discussed at the Tribe's next meeting. The plaintiff filed an objection to the defendant's motion to open judgment on the ground that the defendant had misrepresented its communications with, and the intended actions of, the Tribe. On October 28, 2013, the court denied the defendant's motion to open judgment and extend the sale date and sustained

the plaintiff's objection thereto.

On November 21, 2013, the court appointed independent appraiser filed his appraisal with the court. He opined that the fair market value of the subject property was $775,000. The property was sold on November 30, 2013, for a successful bid of $219,002.01.

On December 5, 2013, the plaintiff filed a motion to approve the November 30, 2013 committee sale, to which the defendant objected, claiming, inter alia, that: (1) it had a letter of intent from a potential buyer for the subject property who was offering $500,000 to purchase it; and (2) the November 30, 2103, sale had taken place during the Norwich Winter Festival Parade, which had limited access to the subject property for potential bidders. The defendant also noted in its objection that the sale had been conducted on the weekend following Thanksgiving when the "weather was cold." The defendant argued that as a result of those adverse conditions, there were only two registered bidders at the sale, one of which was the plaintiff. Had the sale not been conducted in those conditions, the defendant argued, "it is more reasonable than not to conclude that . . . the property would have sold for more than the successful bid, which is disproportionately low compared to the appraised value."

On January 6, 2014, despite the plaintiff's disagreement with the defendant about the adverse conditions surrounding the November 30, 2013 sale, the court sustained the defendant's objection to the motion to approve the sale and set a new sale date of May 3, 2014. In anticipation of the new sale date, the court ordered the independent appraiser to file a new appraisal of the subject property by April 23, 2014. It specified in its order that the new appraisal was to be based, inter alia, upon an interior inspection of the property.

On May 2, 2014, the day before the scheduled sale of the property, the committee of sale filed a motion for advice, noting that the new appraisal previously ordered by the court had not yet been filed, although the committee had received a verbal representation from the independent appraiser that the current fair market value of the subject property was $350,000. Also on May 2, 2014, the defendant filed a motion to open judgment and extend the sale date, again claiming that it had a prospective buyer for the subject property who would purchase it for $500,000.

The trial court did not rule on the May 2, 2014, motions before the sale of the subject property, which took place as scheduled, on May 3, 2014, with a successful bid of $233,700.01. On May 7, 2014, the plaintiff filed a motion for approval of the committee sale. Two days later, on May 9, 2014, the new independent appraisal was filed with the court. It appraised the property, as the appraiser had previously informed the committee

and the committee had informed the court, at $350,000. On May 19, 2014, the defendant objected to the motion for approval of committee sale, claiming that the sale did not conform to the uniform standing orders because the independent appraisal had not been filed by April 23, 2014, as the court had ordered. As a result of this nonconformance, claimed the defendant, the chance for a more favorable sale at a higher price was compromised because, had the $350,000 appraisal of the subject property been filed before the sale, as ordered, the 10 percent deposit required to bid on the property, which had been based on the original $700,000 appraisal, would have been significantly lower, and thus the sale would have attracted more bidders. The defendant further claimed that the Mashantucket Pequot Tribal Nation had approved a short sale to the prospective buyer, who had earlier offered to pay $500,000 for the subject property.

On May 22, 2014, the trial court granted the motion for approval of committee sale and also granted the committee's May 2, 2014 motion for advice, noting on its order on the latter motion that the matter was moot because the appraisal had by then been returned to court. On May 23, 2014, the court denied the defendant's May 2, 2014, motion to open judgment and extend the sale, noting in its order that it did not appear that the Mashantucket Pequot Tribal Nation had, in fact, approved the short sale of the subject property to the buyer who had offered to purchase it for $500,000.

The defendant filed the present appeal from the court's order approving the sale. The defendant's sole claim on appeal is that trial court committed plain error when it approved the foreclosure sale of the subject property when the sale did not comply with the uniform standing orders, which required an independent appraisal to be filed at least ten days prior to the foreclosure sale date. We disagree.

As our Supreme Court has explained: "[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . .

"[W]e recently clarified the two step framework under which we review claims of plain error. First, we must determine whether the trial court in fact committed an error and, if it did, whether that error was indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also

. . . obvious in the sense of not debatable. . . . We made clear . . . that this inquiry entails a relatively high standard, under which it is not enough for the [party] simply to demonstrate that his position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Darryl W.*, 303 Conn. 353, 371–73, 33 A.3d 239 (2012).

The defendant argues that "[a] court's failure to follow the mandatory provisions of a statute prescribing trial procedures constitutes plain error . . . ." Although that is generally the case, the only statute cited by the defendant in support of its claim on appeal is General Statutes § 49-25,[4] which does not specify any date by which an independent appraisal must be returned to the court. The purpose of the appraisal procedure prescribed by § 49-25, moreover, is to give the trial court guidance on the subsequent question of whether to approve the committee sale. *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 279, 630 A.2d 1010 (1993). Here, although the appraisal was not returned to the court prior to the sale of the property, it was returned to the court before it heard and decided the committee's motion to approve the sale. The court therefore had the full benefit of that appraisal for the purpose of considering the committee's motion to approve the sale.

Moreover, the alleged mandate that the court failed to follow in this case was not a statutory provision. The order that the independent appraisal be returned to the court ten days prior to the sale of a foreclosed property is based solely upon the uniform standing orders. The defendant has provided no legal authority, nor are we aware of any, that supports its argument that the court committed plain error when it approved the sale when the appraisal had not been returned to the court prior to the date of the sale. The last page of the Practice Book pertaining to Superior Court Standing Orders explains: "Standing Orders are provided on the Judicial Branch website for the convenience of the bench and bar. They are not adopted by the Superior Court judges and are not Practice Book rules." Additionally, at the top of the form that sets forth the uniform standing orders, it is stated in bold type: "*Unless otherwise ordered by the Court*, these are the Standing Orders for Foreclosures by Sale." (Emphasis added.) One can infer from these published caveats that the uniform standing orders do not carry the weight of statutes or rules of practice, but, rather, that the court may exercise discretion in applying them. The defendant thus has failed to prove that the trial court erred in approving the sale of the subject property, let alone that its alleged error was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal provided by the plain

error doctrine.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Also named as defendants in this action were Mashantucket Pequot Tribal Nation, Ulysses Asset Sub II, LLC, and Deutsche Bank Trust Company Americas. Because none of those parties are involved in this appeal, we refer to Norwich Harborview Corporation as the defendant.

[2] The Uniform Standing Orders for Foreclosure by Sale, Form JD-CV-79, provide, inter alia: "At the time of judgment, a disinterested appraiser (that is, other than the plaintiff's appraiser) will be appointed by the Court and will, under oath, appraise the property and file the appraisal with the Clerk of the Court at least 10 (ten) days prior to the sale. The committee must communicate with the appraiser to make sure that the return of appraisal is filed with the court as ordered." We refer in this opinion to Form JD-CV-79 as the uniform standing orders.

[3] In support of this assertion, the defendant attached to its motion a "Letter of Intent" executed on September 15, 2013, by the purported buyer, which corroborated the defendant's representation that said buyer had agreed to pay $500,000 for the subject property. The letter further provided that the agreement would terminate if the closing did not occur within thirty days of the date of said agreement.

[4] General Statutes § 49-25 provides: "When the court in any such proceeding is of the opinion that a foreclosure by sale should be decreed, it shall, in its decree, appoint a person to make the sale and fix a day therefor, and shall direct whether the property shall be sold as a whole or in parcels, and how the sale shall be made and advertised; but, in all cases in which such sale is ordered, the court shall appoint one disinterested appraiser who shall, under oath, appraise the property to be sold and make return of the appraisal to the clerk of the court. Upon motion of the owner of the equity of redemption, the court shall appoint a second appraiser in its decree. If the plaintiff is the purchaser at sale, or if the property is redeemed at any time prior to the approval of the sale, or if for any reason the sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case. If, after judgment has been rendered, the amount found to be due and for which foreclosure is decreed, together with the interest and the costs, is paid to the plaintiff before the sale, all further proceedings in the suit shall be stayed."

[5] It is also difficult to grasp the defendant's argument that an appraisal reflecting a lower fair market value would have generated a higher sales price. It is nonsensical to suggest that a purchaser of property would pay a higher price for that property if it was appraised at a lower value.